**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KAREN SEARS,                                        Case No. 1:14-cv-745

       Plaintiff,                                    Barrett, J.
                                                    Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Karen Sears filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, which the Defendant disputes. Plaintiff also requests that this matter be remanded under Sentence Six of 42 U.S.C. §405(g) for consideration of new and material evidence.  As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

On August 12, 2011, Plaintiff protectively filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability as of August 2008 due to mental and physical impairments.  (Tr. 215-28).  After Plaintiff's claim was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on February 1, 2013. (Tr. 40-76).  An impartial

1

vocational expert, Suman Srinivasan, was also present and testified.  On March 13, 2013, the ALJ denied Plaintiff's application in a written decision.  (Tr. 14-39).

The record on which the ALJ's decision was based reflects that Plaintiff was 55 years old at the time of the decision.  . (Tr. 53, 74, 227).  Plaintiff graduated from high school while attending special education classes in mathematics.  (Tr. 254).   Plaintiff has past relevant work as a housekeeping cleaner, folder, day care worker, and commercial or institutional cleaner. (Tr. 324). She alleges disability since August 31, 2008 due to degenerative disc disease, degenerative joint disease, plantar spur of her right calcaneus, obesity, borderline intellectual functioning, learning disability, and personality disorder. She is insured for SSD benefits through December 31, 2009. (Tr. 89).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, degenerative joint disease, right plantar spur of the calcaneus, obesity, borderline intellectual functioning, learning disability, and personality disorder."  (Tr. 20).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.   The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work with the following limitations:

> The claimant can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and can occasionally climb ladders, ropes, and scaffolds.  The claimant can understand, remember, and carry out simple instructions and perform simple tasks, and she can occasionally interact with the public, coworkers, and supervisors.  The claimant must avoid production-rate, i.e. assembly line work and production quotas.

2

(Tr. 24). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a housekeeping cleaner and commercial or industrial cleaner. (Tr. 34). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues the ALJ erred by: (1) failing to find additional severe impairments; and (2) failing to properly consider Plaintiff's psychological impairments. Plaintiff also requests that this matter be remanded under sentence six for consideration of new and material evidence. Upon close analysis, I conclude that neither of Plaintiff's asserted errors mandate reversal or remand.

### II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  The ALJ's decision is supported by substantial evidence.**

*1. ALJ's RFC Assessment*

Plaintiff argues first that the ALJ's assessment of her "severe" impairments is unreasonable.  *Tr. 20-21.*  In this regard, Plaintiff contends that in formulating her RFC, the ALJ improperly determined that osteomyelitis, discitis, and psoas abscesses were not severe impairments.  Plaintiff further contends that the ALJ erred in finding that her degenerative disc disease and degenerative joint disease are not disabling. Plaintiff's contentions lack merit.

For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"). With respect to the ALJ's step-two

finding, the ALJ found that Plaintiff's osteomyelitis, discitis, and psoas abscesses had "largely resolved" and since her primary care doctor is currently monitoring the conditions and prescribing antibiotics, those impairments have no more than a minimal impact on her ability to perform basic work activities. (*Tr. 20).*  The ALJ's decision in this regard is substantially supported.

Errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone .... " 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including degenerative disc disease, degenerative joint disease, right plantar spur of the calcaneus, obesity, borderline intellectual functioning, learning disability, and personality disorder and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider any of the three conditions as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand.  As discussed

below, I find no error requiring reversal or remand in this case, because the ALJ adequately considered all of Plaintiff's conditions in determining her RFC.

In this regard, as detailed by the Commissioner, the ALJ reviewed the medical evidence regarding the onset of Plaintiff's osteomyelitis, discitis, and psoas abscesses in August 2008. (Tr. 20, 455-46). As the ALJ noted, Plaintiff was discharged with back pain secondary to these conditions and was prescribed pain and antibiotic medications. (Tr. 20, 455). A follow up MRI in November 2011 indicated marked improvement in the inflammatory changes. (Tr. 489). The ALJ also noted Plaintiff's primary care physician was monitoring and treating these conditions with medication, noting that they have "no more than a minimal impact on her ability to perform basic work activities." (Tr. 20).

Further, the mere existence of an impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security*, 257 F. App'x 923, 930 (6th Cir.2007) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988)). When the record does not contain any reports, doctor statement's or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir.2001) (citing *Higgs*, 880 F.2d at 860; *Maloney v. Apfel*, No. 99–3081, 2000 WL 420700 (6th Cir. Apr.14, 2000); *Foster v. Sec'y of Health & Human Servs.*, No. 88–1644, 1990 WL 41835 (6th Cir. Apr.11, 1990)).

More importantly, even if the ALJ erred in not finding Plaintiff's osteomyelitis, discitis, and psoas abscesses to be a "severe" limitation, such error was harmless. This

is because the regulations require that if one "severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.*, No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D.Ohio 2008) (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987)).   Here, as more fully explained below, the ALJ's decision indicates that he properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining her RFC. (Doc. 22, 21–22.) Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

Next , Plaintiff argues that even if the ALJ were correct about Plaintiff's infection having been a non-"severe" impairment due to its temporary nature, the residual degenerative changes in Plaintiff's spine still have created sufficient functional limitations which prevent her from being able to perform work at a medium level of exertion. In other words, Plaintiff contends that her poly-arthritis is advanced enough that an RFC for medium exertion is completely unreasonable. (Tr. 24-34).

As noted above, the ALJ found that Plaintiff could perform a limited range of medium work. In so concluding, the ALJ noted normal to mild clinical findings relating to Plaintiff's back, hip and lumbar spine.  Notably, in 2008, Plaintiff sought treatment at Bethesda Hospital on August 21, 2008, complaining of lower back and lower extremity

pain (Tr. 459). During examinations, Plaintiff had tenderness in the low back and right hip pain; however, she had normal lower extremity strength and sensation.

An additional examination on January 28, 2009, revealed normal inspection, palpation, and range of motion in the neck, spine, and bilateral upper and lower extremities. (Tr. 345).

On May 13, 2010, Plaintiff sought emergency treatment at Bethesda Hospital for right lower leg and knee pain, with some swelling. (Tr. 341-42, 490-92). Examination revealed tenderness; however, there was no erythema, redness, or signs of infection, and pulses were equal bilaterally in all extremities *Id.* Plaintiff was diagnosed with acute right lower leg strain and discharged in good, stable condition, and she was ambulatory at the time. *Id.*

On July 28, 2010, Plaintiff complained to her primary care provider of continued right knee pain, swelling, and soreness for the past several months. (Tr. 332-34). Plaintiff weighed 209 pounds at the time, and examination revealed an abnormal gait and tenderness at the right knee with crepitation on range of motion. (Tr. 332-34). However, Plaintiff had normal inspection/palpation in the left lower extremity and normal stability in the bilateral upper and lower extremities. (Tr. 332-34).

On October 3, 2011, Plaintiff underwent consultative examination with Dr. Phillip Swedberg, at which time she complained of right knee pain. (Tr. 355-63). Plaintiff reported a history of arthritis, occasional instability, and stiffness worsened with prolonged sitting, prolonged weight bearing, and cold weather. (Tr. 355-63). Plaintiff denied any prior treatment and reported taking Motrin to treat the pain. (Tr. 355-63). Plaintiff had difficulty with forward bending at the waist and reduced range of motion in

the spine; however, there was no evidence of paravertebral muscle spasm, no tenderness with percussion spinous process, straight leg raising was normal, and cervical spine range of motion was normal. (Tr. 355-63). Muscle strength, grasp strength, and sensation were well preserved in the upper extremities and Plaintiff had full upper and lower extremity strength bilaterally. (Tr. 355-63). Examination of the hips revealed no tenderness to palpation and normal range of motion, and Plaintiff had normal range of motion in the bilateral ankles as well. (Tr. 355-63). Examination of Plaintiff's knees revealed normal range of motion with no evidence of crepitus, ligamentous laxity, or tenderness to palpation in the knee joints. (Tr. 355-63).  An x-ray of the right ankle revealed a very small plantar spur and an x-ray of the right knee revealed slight degenerative changes, narrowing of the posterior patella space, and minimal narrowing of the knee joint. (Tr. 355-63). Dr. Swedberg diagnosed Plaintiff with morbid obesity and right knee pain, although he noted that knee examination was normal. (Tr. 355-63). He also indicated that Plaintiff's obesity undoubtedly contributed to her symptoms, and indicated weight reduction would diminish her complaints. (Tr. 355-63).

Additionally, two state agency physicians reviewed Plaintiff's medical file in October 2011 and on March 12, 2012, respectively, and found that Plaintiff could perform medium work with certain postural limitations.  (Tr. 77-100, 103-134).

In light of the foregoing, the ALJ determined that objective evidence of record indicates that Plaintiff experiences pain and decreased mobility as a result of degenerative disc disease, degenerative joint disease, right calcaneus plantar spur, and obesity.  Relying on the findings of Dr. Swedburg and the assessments by state agency

10

physicians, the ALJ determined that Plaintiff was capable of performing where she is expected to lift up to fifty pounds occasionally, meaning very little to one third of the workday, and twenty-five pounds frequently, meaning one third to two thirds of the workday." (Tr. 28).

Thus, contrary to Plaintiff's assertions, the ALJ properly considered Plaintiff's impairments in combination and his determination that Plaintiff is capable of performing medium work is substantially supported by the evidence of record.

*2. Evaluation of Plaintiff's Mental Impairments*

Plaintiff's second assignment of error contends that the ALJ improperly evaluated Plaintiff's mental impairments. In this regard, Plaintiff contends that the ALJ minimized the impact of her psychological impairments, including her learning disability and inability to perform mathematical calculation beyond single-digit addition. As such, Plaintiff argues that she could not perform jobs that require math calculations as part of her work duties. As will be explained below, Plaintiff's contention lacks merit.

With respect to Plaintiff's mental impairments the record contains the following evidence:

On November 4, 2011, consultative examiner Dr. David Chiappone, Ph.D., opined Plaintiff would have some difficulty remembering information over time and would have difficulty effectively attending to multi-step tasks. (Tr. 364-69). He indicated Plaintiff would have some difficulty dealing with supervisors and coworkers and would have difficulty dealing with stress and pressure on a jobsite. (Tr. 364-69). He also indicated that, due to mental impairment symptoms, Plaintiff would have difficulty

11

dealing with "give and take" and might be taken advantage of in a work setting. (Tr. 364-69).

In addition, two state agency psychologists reviewed the record and found that Plaintiff could perform simple tasks that were not fast paced and did not require close, sustained concentration or social interactions.  (Tr. 77-100, 103-117).

In light of this evidence the ALJ determined that Plaintiff could perform her past relevant work as a housekeeper. Plaintiff bears the burden of proving she cannot perform her past relevant work either as she performed itor as it is generally performed in the national economy. See 20 C.F.R. §§ 404.1527; 416.1527; *Studaway v. Sec'y of Health & Human Servs.,* 815 F.2d 1074, 1076 (6th Cir. 1987).  As noted by the Commissioner, the Dictionary of Occupational Titles (DOT) indicates Plaintiff's past relevant work as a housecleaner only requires simple addition (Tr. 34). See DICOT 323.687-014. Moreover, Plaintiff has not explained how her mathematical limitations preclude her from engaging in her past relevant work as a housecleaner.  As noted above, Plaintiff attended special education courses in math; however, there is no evidence in the record that Plaintiff had difficulty performing her past relevant work as a housekeeper based on this limitation.

Accordingly, the undersigned finds that the ALJ's decision is substantially supported in this regard.

### C.  Plaintiff's request for a sentence six remand is not well-taken.

Plaintiff's statement of errors also asks this Court to remand this matter pursuant to sentence six of 42 U.S.C. § 405(g) in order to consider new evidence submitted to the Appeals Council.  Namely, on August 14, 2013, Plaintiff submitted to the Appeals

Council records from Bethesda North Hospital which range from January 3, 2013 through March 13, 2013. (Tr. 512-585). These records include evidence of a hospitalization from March 10-13, 2013 for newly diagnosed diabetes, hyperglycemia, hypokalemia, and anemia. (Tr. 565-570). The Appeals Council considered this evidence but concluded it did not provide a basis for changing the ALJ's decision. (Tr. 2).

As noted by the Commissioner, because the evidence was only presented to the Appeals Council, it is not part of the final decision made by the ALJ on behalf of the Commissioner. 42 U.S.C. § 405(g); see *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); (if Appeals Council declines to review ALJ's decision, court cannot consider evidence not presented to ALJ); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). Notably, evidence that was not presented to the ALJ may not be reviewed by this Court for purposes of determining whether substantial evidence exists to uphold the administrative decision. *See Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). The only basis under which this Court may consider such evidence is to determine whether remand is appropriate under sentence six of 42 U.S.C. § 405(g). In this regard, a plaintiff must show both that she possesses evidence that is "new and material" and establish "good cause" to excuse her failure to present that same evidence during the pendency of the administrative proceeding. *See Oliver v. Sec'y of Health and Human Servs.,* 804 F.2d 964, 966 (6th Cir.1986).

Here, Plaintiff offers the evidence as "new" insofar as they were not submitted to the ALJ prior to the issuance of his decision and because they do not duplicate any records already in the record. Plaintiff further asserts that such records are "relevant" because they because they provide a basis for Plaintiff's fatigue and weakness, which

explain her reports that she cannot lift her ten-pound dog or stand and/or walk for more than twenty minutes at a time. (Tr. 52-54).  Last, Plaintiff contends "good cause" exists for not having submitted the records prior to the ALJ's decision, because "it was not possible to submit these records to the ALJ prior to when he issued his decision, since Plaintiff was discharged only five days before the ALJ issued his decision, and since the transcribed records were not available for copying until some time after then." (Doc. 9).

Upon careful review, the undersigned finds that Plaintiff has not met her of burden of showing materiality, *i.e* that there is a reasonable probability that the Commissioner would have decided the case differently had he considered the evidence. *Sizemore*, 865 F.2d at 711.  As noted by the Commissioner, the records of Plaintiff's two emergency room admissions do not contain evidence that would change the administrative result. Specifically, the January 2013 emergency room records indicate Plaintiff sought treatment for upper respiratory problems, of five days duration. (Tr. 575). She had no back pain, edema, or muscle aches, and was in no acute distress. (Tr. 575). Plaintiff complained of vague symptoms and was eventually diagnosed with acute bronchitis. (Tr. 582). There is no evidence Plaintiff had any follow up treatment for her bronchitis. Two months later, she sought treatment at the emergency room for complaints of nausea and vomiting after drinking a milkshake. (Tr. 512). She was treated with IV fluid hydration and had marked improvement. (Tr. 518). After additional testing, Plaintiff was diagnosed with diabetes and her symptoms continued to improve with treatment. (Tr. 518, 568).

Furthermore, Plaintiff's newly diagnosed diabetes, hyperglycemia, hypokalemia, and anemia from the emergency room visits also fail to establish materiality. As firmly

14

established by the Sixth Circuit, a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). Plaintiff has offered no evidence that such impairments could not be controlled with medication and/or persist so as to preclude employment. See 20 C.F.R. §§ 404.1520, 416.920 (A finding of disability hinges not on the name of the condition, but on the functional limitations it causes to prevent the individual from engaging in any work available in the national or regional economy). *See also Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) (if a claimant's condition can be controlled with medication, it is not disabling).

Of course, to the extent that Plaintiff has new evidence that her condition has worsened, she is free to submit a new application for benefits. *See, e.g., Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir.1992). It is the function of this Court only to review whether the alleged "new" evidence warrants remand under Sentence Six of 42 U.S.C. § 405(g). In this case, it does not.

**II. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; 2) Plaintiff's request for a sentence six remand be **DENIED**; and 3) as no further matters remain pending for the Court's review, this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KAREN SEARS,                                        Case No. 1:14-cv-745

        Plaintiff,                              Barrett, J.
                                                    Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16

17